IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ANDERSON & STRUDWICK, INC., ) | |
| ) | |
| and ) | |
| ) | |
| ANDERSON & STRUDWICK ) | |
| INVESTMENT CORPORATION, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 3:11CV818–HEH |
| ) | |
| v. ) | |
| ) | |
| IBD-PLACEMENT & RECRUITING ) | |
| SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This breach-of-contract and tortious interference action is presently before the Court on Plaintiffs' Motion for Default Judgment, filed on April 16, 2012. After Plaintiffs filed suit in this Court on December 8, 2011, Defendant IBD-Placement & Recruiting Services, LLC ("IBD" or "Defendant") failed to appear, answer, or otherwise respond within the time prescribed by Rule 12. As a result, the Clerk of Court entered IBD's default on March 13, 2012. (*See* Dk. No. 9.) Pursuant to Rule 55(b), Plaintiffs now seek a default judgment in the sum of $1,021,904. Having been satisfied that Defendant was properly served with process on January 10, 2012,[1] the Court turns to the

---

[1] In accordance with Federal Rules of Civil Procedure 4(h) and 4(e)(1), Plaintiffs effectuated proper service of process under Florida law by leaving a copy of the complaint and summons with a resident of suitable age at the home of Defendant's registered agent in Lutz, Florida. (*See* Pls.' Return of Service, ECF No. 3; Pls.' Suppl. Br. Supp. 3, ECF No. 13.) *See*

viability of Plaintiffs' claims and the amount of damages, if any, to be awarded. For the reasons set forth herein, Plaintiffs' Motion will be granted.

## I. FACTUAL BACKGROUND

"[A] defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Thus, in determining whether to award a default judgment pursuant to Rule 55(b)(2), this Court assumes the plaintiff's well-pleaded factual allegations, except for those pertaining to damages, to be true. Plaintiffs' Complaint alleges the following facts.

Anderson & Strudwick, Inc. ("A&S") is a broker-dealer and registered investment advisor headquartered in Richmond, Virginia.[2] In March 2010, A&S entered into a written contract ("the Agreement") with IBD, a Florida-based brokerage employment recruiter, under which IBD agreed, for a specified fee, to identify and refer potential candidates for affiliation with A&S as employees or independent contractors in A&S's Orlando or Tampa Bay offices. (Compl. ¶¶ 1, 11.) As part of the Agreement, IBD also agreed not to "directly or indirectly[] solicit[,] encourage or request any employee or independent contractor of A&S placed by IBD to work or perform services for any other securities broker-dealer or terminate his/her association with A&S" for a period of 12 months after the termination of the contract,[3] absent the consent of A&S. (*Id.* ¶ 11.)

---

Fla. Stat. 48.031(1)(a). Moreover, IBD's registered agent, Bradley Fay, has expressly acknowledged his awareness of this litigation. (Ferretti Aff., ECF No. 14, Ex. A.)

[2] Both Anderson & Strudwick, Inc. and its holding company, Anderson & Strudwick Investment Corporation, are plaintiffs in this action. For purposes of simplicity, this Memorandum Opinion refers to both parties collectively as "A&S" or "Plaintiffs."

[3] Both parties were authorized to terminate the Agreement upon 30-days' written notice. (Compl. ¶ 12.)

2

A&S alleges that it paid in full for IBD's services, and otherwise fully performed its material obligations to IBD under the Agreement. (*Id.* ¶ 13.)

Starting in April 2010, IBD introduced multiple brokers to A&S—many of whom accepted positions with the company. (*Id.* ¶ 14.) As a sign-on incentive, A&S made "substantial loans" to many of these new hires in the principal sum of $1,154,365. (*Id.* ¶ 15.) A&S expected to recoup these loans by making periodic withdrawals from the brokers' "monthly production bonuses." (*Id.*) Notably, Plaintiff alleges that IBD "assisted in the preparation and/or negotiation of the promissory notes for these broker loans," such that IBD "was aware of and intimately familiar with" the nature of the underlying loans. (*Id.* ¶ 16.)

In approximately March 2011, IBD introduced A&S to International Assets Advisory ("IAA"), a competitor securities firm interested in acquiring A&S's Florida operations. (*Id.* ¶ 17.) Acting as an intermediary, IBD conveyed to A&S a written proposal by IAA to acquire the company's Orlando and Tampa Bay offices, including the brokers which IBD had previously placed at those locations. (*Id.*) As part of its proposal, IAA offered to assume any outstanding loans for the Orlando and Tampa Bay brokers, and to that end included "detailed information, apparently provided by IBD," concerning the balances on the loans to A&S's recently-hired employees. (*Id.* ¶ 18.)

After negotiations fell through, IAA rescinded its acquisition offer. Between October and December 2011, however, seven of the brokers placed by IBD in A&S's Florida offices resigned, along with at least three of their support staff, and began employment with IAA. Plaintiffs allege, "[u]pon information and belief," that "IBD

3

solicited some or all of these brokers to leave A&S and join IAA" in violation of its non-solicitation contract with A&S. (*Id.* ¶¶ 20-21.) In addition to "lost revenues and future profits with existing and anticipated customers," A&S claims that these unapproved departures prevented A&S from recouping the balances of its outstanding loans to six of the former employees, which became due and payable in full upon the brokers' resignations. (*Id.* ¶¶ 24-25.) In total, Plaintiffs contend that the defecting brokers have failed to repay the principal amount of their loans in the sum of $849,280.

Plaintiffs' three-count Complaint, filed on December 8, 2011, asserts that IBD breached its non-solicitation agreement with A&S and intentionally interfered with the contractual relationships between A&S and its former employees.[4] In addition to the principal amount owed on its unpaid loans, A&S seeks to recover interest as provided in the brokers' promissory notes, calculated at a rate of 14 percent per annum beginning at the corresponding broker's date of resignation, in the sum of $59,767. A&S also seeks to recover the $112,357 in fees it paid for IBD's placement of the seven former brokers. In total, therefore, Plaintiffs requests an award of damages in the amount of $1,021,904.

## II. ANALYSIS

Federal Rule of Civil Procedure 55(b) authorizes courts to enter a default judgment as to any party that "fail[s] to plead or otherwise defend." Fed. R. Civ. P. 55(a)-(b)(2). "[D]espite occasional statements to the contrary," however, "a default is not

---

[4] Although Anderson & Strudwick, Inc. and Anderson & Strudwick Investment Corporation assert separate tortious interference claims in Counts Two and Three, respectively, the causes of action rely on identical facts and seek identical relief. In the interest of efficiency, therefore, this Court will assess the two claims together.

treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In evaluating a request for a default judgment, the district court's task is to determine whether the plaintiff's uncontested factual allegations, taken as true, state a viable cause of action. *Id.*; *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim."). If the court concludes that liability is established, it must then independently calculate the appropriate amount of damages. *Ryan*, 253 F.3d 780-81; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—*other than one relating to the amount of damages*—is admitted if a responsive pleading is required and the allegation is not denied.") (emphasis added).

## A. Cognizability of Plaintiffs' Claims

In this case, Plaintiffs have pleaded sufficient facts to support their claims. As the Agreement underlying this matter was to be performed in Florida, the Court will apply the substantive law of Florida to determine the cognizability of Plaintiffs' breach-of-contract and tortious interference claims, assessing each in turn.[5]

Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000). Because it appears to have been

---

[5] The application of Virginia law would not materially alter the Court's analysis or conclusions.

justified by "legitimate business interests," this Court finds, for purposes of the present motion, that the parties' Agreement is valid and enforceable. *See Walsh v. PAW Trucking, Inc.*, 942 So. 2d 446, 448 (Fla. Dist. Ct. App. 2006) ("An enforceable restrictive covenant is one in which 'the contractually specified restraint is reasonably necessary to protect a legitimate business interest.'") (quoting Fla. Stat. § 542.335(1)(c) (2003)). Further, Plaintiffs have adequately alleged that IBD materially breached its obligation under the contract not to solicit employees which it previously placed at A&S, resulting in financial injury to A&S. Accordingly, the facts alleged reasonably support a cause of action for breach of contract.

The facts presented also give rise to a cognizable claim for intentional interference with Plaintiffs' contract expectancy. "There are four elements of tortious interference with a business relationship: '(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Swope Rodante, P.A. v. Harmon*, No. 2D11-3228, 2012 WL 1020184, at *1 (Fla. Dist. Ct. App. March 28, 2012) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Here, A&S alleges not merely that IBD interfered with its relationship with its former brokers in violation of the parties' non-solicitation contract, but that IBD did so with *knowledge* that A&S expected (1) to continue its employment relationship with the brokers, and (2) to recover its loans to the brokers during the course of that relationship. Indeed, Plaintiffs allege that IBD facilitated the hiring of the employees at issue and assisted in drafting the

promissory notes underlying the loans extended by A&S. And as a direct result of IBD's actions, A&S claims that it is now precluded from recouping the principal and interest owed on its outstanding loans to the former A&S brokers. Taking these allegations as true, the Court finds Plaintiffs' allegations to state a viable claim for tortious interference.

## B. Amount of Plaintiffs' Damages

Having asserted facts supporting cognizable causes of action for breach of contract and tortious interference, Plaintiffs are entitled to the entry of a default judgment. It remains, however, for the Court to determine the appropriate amount of damages. Plaintiffs' requested sum includes (1) placement fees paid to IBD totaling $112,357; (2) the unpaid principal balance of A&S's loans to the defecting brokers totaling $849,280; and (3) 14 percent interest on the balance of the unpaid principal, totaling $59,767.[6]

In assessing the extent of a plaintiff's damages, a court may conduct a formal evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2). The court need not do so, however, if the damages can be ascertained based on detailed affidavits or documents attached to the plaintiff's motion. *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) ("[I]n some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing."); *cf. Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (finding "no need to convene a formal evidentiary hearing on the issue of damages" where the plaintiff submitted

---

[6] Plaintiffs also seek reimbursement for the costs incurred in pursuing this litigation, totaling $500. Because it must be submitted separately with supporting documentation in accordance with the Local Rules, this portion of Plaintiffs' request is DENIED.

7

affidavits establishing the amount of damages); *DirecTV, Inc. v. Yancey*, No. 4:04cv011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (deeming a hearing unnecessary because the plaintiff had "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits"). In any event, the damages award may not exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c); *see also Compton v. Alton Steamship Co.*, 608 F.2d 96, 105 n.16 (4th. Cir. 1979) ("[T]he relief available on default [must] be such as within the fair scope of the allegations of the complaint and, when money judgment is sought, the specific amount demanded.") (quotation marks and citation omitted). Here, because the record reasonably establishes Plaintiffs' damages, a hearing on the matter is unnecessary.

Plaintiffs have attached to their Motion for Default Judgment the Affidavit of Donald H. Newlin ("Newlin"), Chairman of the Board of Directors of Anderson & Strudwick Investment Corporation. Newlin avers that he "ha[s] personal knowledge related to the harm caused to [A&S] as a result of IBD's breach of contract and interference with Plaintiffs' contractual relationships with the [b]rokers." (Newlin Aff. ¶ 10.) Specifically, he indicates that A&S "paid to IBD the following amounts for the placement of the following brokers":

| | | |
|---|---|---|
| (a) | J. Donald Gunn | $52,083 |
| (b) | Roger Thompson | $15,516 |
| (c) | Christopher Ekins | $9,298 |
| (d) | Donna Jenkins | $12,109 |
| (e) | Laura Shiveler | $2,573 |

| | | |
|---|---|---|
| (f) | Gregory Long | $18,403 |
| (g) | Bill Nonte | $2,375 |

(*Id.* ¶ 13.) In total, therefore, Newlin asserts that, "[a]s a result of IBD's solicitation [of the foregoing brokers] in breach of the Agreement," Plaintiffs were "damaged in the sum of $112,357, which is the total amount paid by A&S to IBD for IBD's placement of the [b]rokers." (*Id.* ¶¶ 15-16.)

The Affidavit also provides details as to the defaulted loans at issue in this matter, and confirms that IBD "assisted in the preparation and/or negotiation of the promissory notes" for the loans of those "brokers who were placed at A&S by IBD." (*Id.* ¶ 19.) Pursuant to an acceleration provision contained in the promissory notes, Newlin explains that the brokers' resignations "caused the immediate acceleration of each [b]roker [l]oan," such that the loans are "now due and payable in full." (*Id.* ¶ 21.) Of the defecting employees, he states that the following six brokers "have failed and refused to repay the remaining balance of their loans" in the amounts indicated below:

| | | |
|---|---|---|
| (a) | J. Donald Gunn | $676,666 |
| (b) | John Nole | $17,400 |
| (c) | Christopher Ekins | $25,683 |
| (d) | Donna Jenkins | $30,514 |
| (e) | Gregory Long | $27,000 |
| (f) | Roger Thompson | $72,017 |

9

(*Id.* ¶ 24.) Thus, "[t]he total unpaid principal" on these loans is $849,280. Newlin also calculates the total amount of interest owed on the outstanding loans, based on an annual rate of 14 percent, to be $59,767.[7] (*Id.* ¶¶ 27-28.)

Curiously, Plaintiffs' Complaint mentions only *seven* defecting brokers—six of whom have allegedly failed to repay some portion of their loans from A&S. More precisely, the Complaint asserts that "[t]he five (5) brokers who resigned on or about October 14 and/or 15, 2011, from the Tampa Bay office have failed to repay their loans (amounting to a total remaining balance of $822,280)," while "[o]ne of the two brokers who resigned on or about December 2, 2011, from the Orlando office has failed to repay his loan (amounting to a total remaining balance of approximately $27,000)." (Compl. ¶ 25.) Yet both Plaintiffs' Motion for Default Judgment and Newlin's Affidavit identify *nine* former employees—namely, J. Donald Gunn, John Nole, Roger Thompson, Christopher Ekins, Donna Jenkins, Mary Gunn, Laura Shiveler, Gregory Long, and Bill Nonte—whose placement fees, loan balances, or both, A&S now seeks to recover. Unfortunately, the Complaint does not identify any particular broker by name, so the Court is unable to reconcile this apparent discrepancy. Nonetheless, this Court finds the

---

[7] Each promissory note provides:

> Upon the occurrence and during the continuation of an Acceleration Event hereunder which is not waived, the entire outstanding principal balance shall bear interest thereafter until paid at an annual rate equal to the lesser of (i) fourteen percent (14%) per annum, or (ii) the maximum rate of interest allowed to be charged under applicable law, regardless of whether or not there has been an acceleration of the payment of principal as set forth herein.

(Newlin Aff. ¶ 26.)

10

averments set forth in Newlin's Affidavit to provide a sufficient basis for the determination of damages in this case.

First, the *amount* of damages sought in the Complaint is consistent with the loan amounts proffered by Newlin; that is, both the Complaint, Motion for Default Judgment, and Affidavit allege a total unpaid principal balance of $849,280 on the broker loans. Second, because the Complaint does not allege a sum certain as to the fees paid to IBD for its placement of the seven defecting brokers, and since Newlin identifies in his Affidavit seven specific brokers and the fees paid for each, these documents are not materially inconsistent. The Court therefore finds Plaintiffs' damages in this respect to be sufficiently certain and reliable. *Trustees of the Nat'l Automatic Sprikler Indus. Welfare Fund v. Security Fire Protection, Inc.*, No. DKC 10-3573, 2011 WL 5034800, at *3 (D. Md. Oct. 21, 2011) ("Where a complaint does not specify an amount, 'the court is required to make an independent determination of the sum to be awarded.'") (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). Plaintiffs' calculation of unpaid interest also appears to be accurate and correct under the terms of the promissory notes between A&S and its former employees.

### III. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs' Complaint, to which Defendant has failed to respond, states sufficiently cognizable causes of action to warrant the entry of a default judgment in Plaintiffs' favor. The Court further finds, based on the Affidavit of Donald H. Newlin, that Plaintiffs were damaged by Defendant's purported wrongdoing in the amount of $1,021,404. Accordingly, Plaintiffs' Motion for Default

Judgment will be granted, and the Court will enter a default judgment in the sum of $1,021,404.

An appropriate Order will accompany this Memorandum Opinion.

                                         /s/
                                    Henry E. Hudson
                                    United States District Judge

Date: May 10, 2012
Richmond, VA